IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN M. ORLANDO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06 C 3758 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| UNITED OF OMAHA LIFE INSURANCE | ) |
| COMPANY, a Nebraska corporation, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

John M. Orlando ("Orlando"), an Illinois citizen, is suing United of Omaha Life Insurance Company ("United"), a Nebraska corporation, in this Court under diversity jurisdiction. On October 31, 2006, Orlando filed an amended complaint alleging two counts; the first count for breach of contract and the second count for taxable costs under Section 155 of the Illinois Insurance Code, codified at 215 Ill. Comp. Stat. 5/155 (West 1996). Before the Court now is United's Motion to Dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, United's motion is **DENIED**.

**I.     BACKGROUND**

The following facts are taken from the Amended Complaint are assumed to be true. Orlando is an Illinois citizen. In 2002, he became employed by West Monroe Partners ("Partners"). Orlando was a highly paid employee who earned $16,666.67 per month. Orlando purchased insurance pursuant to a group disabilities benefits policy (the "Policy") with United.

From the certificate and booklet attached to the amended complaint, it is evident that United is the insurer and Partners is the policyholder under the Policy. As of January 1, 2003, Orlando participated in the plan and contributed a monthly premium under the terms of the Policy. As of June 23, 2003, Orlando became disabled under the terms of the Policy. Orlando calculated his monthly benefit under the terms of the Policy to be $7,500.00 per month. However, United has provided Orlando with a monthly benefit of only $2,606.65 per month. United has failed and refuses to provide Orlando with the correct amount of long-term disabilities benefits under the terms of the Policy. As a result of this failure, Orlando is suing United for damages for its breach of the Policy. He is also suing United for taxable costs for violations of the Illinois Insurance Code arising out of the same acts. United argues that Orlando's claims should be dismissed pursuant to Rule 12(b)(6) because they are completely preempted by section 502 of the Employee Retirement Income Security Act, codified at 29 U.S.C. §1132 ("ERISA").

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ v. City of Chicago*, 2007 WL 2669403 at *7 (7th Cir. September 13, 2007) (citing *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (May 21,

2007). All reasonable inferences are to be drawn in favor of the plaintiff. *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 493 (7th Cir. 1998) (citation omitted).

**III. DISCUSSION**

*Properly Viewing Documents not attached to the Complaint*

United claims Orlando cannot pursue his breach of contract claim or his claim for taxable costs under Section 155 of the Illinois Insurance Code because they are completely preempted by ERISA. In support of this contention, United attaches Group Policy No. GLTD-86F9, the Policy, to its memorandum in support of its motion to dismiss. Orlando attached a booklet entitled "Your Group Voluntary Long-Term Disability Benefits," which United refers to as the Certificate. For purposes of this motion, the Court will refer to this booklet as the "Booklet". The first issue is whether this Court may properly view the Policy in adjudicating the 12(b)(6) motion to dismiss, since it was not attached to the Amended Complaint, but instead provided by United.

Documents attached to the complaint as exhibits are considered to be a part of the pleadings, and generally, only those documents are reviewable by the Court on a 12(b)(6) motion to dismiss. Fed. R. Civ. P. 10(c); *Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 539 (7th Cir. 2005). However, documents attached to a motion to dismiss by the defendant may be considered when they are referred to in the plaintiff's complaint and are central to plaintiff's claim. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Here, Orlando specifically references the Policy several times in the Amended Complaint and it is central to his claims because it is the basis of his claims. Therefore, the Court will review the Policy without

converting the motion to dismiss into a motion for summary judgment. *See Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 478-79 (7th Cir. 2002).

*Preemption*

ERISA's preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and are not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). "Employee benefit plans" are defined to include "employee welfare benefits plans." 29 U.S.C. § 1002(3). The United States Supreme Court has repeatedly held that ERISA's preemption clause has a "broad scope" and an "expansive sweep." *See e.g. California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997) (citations omitted); *see also DeBartolo v. Blue Cross Blue Shield, et al.*, 2001 WL 1403012, at *1 (N.D.Ill. 2001) (collecting cases). When Congress enacted ERISA, it expected that "a federal common law of rights and obligations under ERISA-regulated plans would develop" for those issues on which ERISA does not speak directly. *Trustmark Life Ins. Co. v. Univ. of Chicago Hosp.*, 207 F.3d 876, 881 (7th Cir.2000) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). Thus, the Seventh Circuit has held that state common law can be used only in situations where "it is not inconsistent with congressional policy concerns." 207 F.3d at 881( quoting *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir.1993)). Here, preemption depends on whether the plan created by the Policy is an "employee welfare benefit plan" (hereinafter referred to as an "ERISA plan") as defined by ERISA. If the Court can determine this by viewing the amended complaint, Booklet and Policy, only then should Orlando's state law claims be dismissed for failure to state a claim upon which relief can granted.

Title 29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

In *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, the Seventh Circuit explained that in simplified terms, the statute requires that for a particular plan to come under ERISA's purview, it must be "(1) a plan, fund, or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries." 805 F.2d 732, 738 (7th Cir.1986). Here, Orlando concedes that every requirement except the "established or maintained" element is present.

It is important to note that Orlando satisfied its initial burden of pleading by including explicit allegations in its amended complaint that Partners did not establish or maintain the plan created by the Policy. Thus, the burden is on United to show that the amended complaint, taken along with the Policy and the Booklet contain a sufficient basis to lead to the undeniable conclusion that Partners did in fact "establish or maintain" the plan. A court will determine whether an employer "established or maintained" a plan by observing the level of involvement the employer had in the plan's creation and administration. *See Brundage-Peterson v. Compcare*

*Health Services Ins. Corp.*, 877 F.2d 509, 510 (7th Cir. 1989); *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118 (9th Cir. 1998).

In *Brundage-Peterson*, the Court held that within the framework of 29 C.F.R. § 2510.3-1(j)(3), an "employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation." 877 F.2d at 510. 29 C.F.R. § 2510.3-1(j)(3) is known as the safe harbor provision because it pronounces four activities that an employer can engage in that will not result in a plan's inclusion under ERISA. *Id*. So while the safe harbor provision provides the activities that will result in exclusion from ERISA's sweep, *Brundage-Peterson* recognized that two employer activities, contracting with the insurer to provide the plan and designating eligible employees under it, were sufficient to place the plan within ERISA's framework.

The safe harbor provision explains what activities taken together, will not amount to "establishing or maintaining" a plan. A plan will not come under the broad sweep of ERISA when it can be demonstrated that the employer (1) did not make any contributions to the plan; (2) left participation in the program completely to the discretion of the employees; (3) *without endorsing the program*, limited its functions with respect to the program to permitting the insurer to publicize the program to employees, collecting premiums through payroll deductions or dues checkoffs and remitting them to the insurer; and (4) not receiving any consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs. 29 C.F.R. § 2510.3-1(j) (emphasis added).

In focusing on two employer activities, the *Brundage-Peterson* Court was by no means limiting all of the possible activities that could constitute "establishing or maintaining" a plan to these two functions. Instead, this Court reads that statement as mere recognition that the defendants' activities, contracting with the insurer and designating eligible employees, were sufficient to constitute "establishing or maintaining" a plan under the safe harbor provision. Thus, although the parties argue over its applicability, whatever the breadth of the *Brundage-Peterson* holding, it is fairly obvious that if one can demonstrate on the pleadings that an employer contracted with the insurer *and* designated which employees were eligible under the plan, a court will conclude the employer "established or maintained" the plan.

In attempting to satisfy its burden, United argues that Partners performed the two activities identified in Brundage-Peterson as sufficient to "establish or maintain" an ERISA plan. First, United argues that this Court should conclude that Partners contracted with United to purchase insurance based upon the Policy's designation of Partners as the Policyholder. United is correct. It is beyond argument that the Policy's titles and terms support this assertion. In addition to being designated the Policyholder in both the Booklet (p.1) and the Policy (p.1), Partners <u>obligated itself</u> to perform administrative tasks under the terms of the Policy and to provide United with certain information, (Policy, pp. 3 and 5). For instance, Partners must make all premium payments on behalf of the participating employees to United. (Policy, p.3) Partners is given the option of terminating the Policy. (Policy, p.3.) Partners is designated as the "plan sponsor," whose responsibilities include reporting the legal and tax status of the plan. (Policy, p. 7.) These facts, readily apparent from a cursory reading of the Policy and Booklet, all serve to

establish that Partners contracted with United to administer the plan under the terms of the Policy and therefore, participated in the creation of the plan.

Second, United contends that Partners designated which of Partners' employees who were eligible for coverage. In support of this contention, United points to the Booklet's explanation that only employees who were actively employed were eligible for inclusion in the plan (p. 8) and that it was Partners' duty under the Policy to provide who was eligible or not to United (p. 5). In *Brundage-Peterson*, the Court identified a requirement that employees have at least 30 days on the job before becoming eligible to participate in the plan as the "designation." 877 F.3d at 510. Here, the Booklet explains that an eligible employee must not be an independent contractor, a service provider, a seasonal or temporary worker of any kind, nor provide work pursuant to a lease agreement. (P. 7.) Moreover, an eligible employee under the plan must provide 30 or more hours of work consistently for Partners. (P. 6.) This Court concludes that United has demonstrated Partners designated eligible employees under the plan. It cannot be denied that under the Policy, Partners bears the responsibility of identifying and informing United which of its employees were eligible for participation.[1]

Orlando contends that the *Brundage-Peterson* holding is inapplicable here, not because the rule is not satisfied, but rather because the Court actually based its holding on three factual

---

[1] Lest Orlando be inclined to argue that the eligibility requirements reflect mere boilerplate language, not Partners' choices, such a fine distinction is immaterial because there is no indication that the *Brundage-Peterson* court intended to inject this element into the analysis. All that matters here is whether the employer, not the insurer, assumed the administrative function of designating which employees were eligible to enroll in the plan. This result is supported by the absence of designation from the administrative functions in which an employer can engage without losing safe harbor protection. *See* 29 C.F.R. § 2510.3-1(j)(3). Moreover, Partners agreed to the terms governing the plan under the Policy by virtue of contracting with United.

elements concerning the plan instead of the two announced in the rule, 877 F.2d at 510, and that third element is not present here. Again, in *Brundage-Peterson*, the Court held that an "employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation." 877 F.2d at 510. The Court described the plan as possessing three elements. *Id*. They were (1) the employer contracted with the insurer to provide the plan, (2) the eligibility requirement of being an employee of more than thirty days' standing, and (3) the employer's contribution of the worker's share of the insurance premiums. *Id*. at 511. Orlando contends that because United can not show Partners contributed its employees' shares of the premiums, this Court cannot conclude ERISA applies based on *Brundage-Peterson*. Orlando is incorrect. The *Brundage-Peterson* Court specifically explained that the employer contribution merely validated its finding, it did not influence it. *Id*. at 511. The Court explicitly discounted the contribution as a contributing factor for its holding based upon the Court's extrajudicial assumption that due to the economic nature of employer withholdings, the employee is really the party making the contribution (due to the fact that an employer will treat the contribution like any other cost of production and take it out of the pay it actually gives to the employee). *Id*.

In conclusion, although Orlando initially pleaded sufficiently, his allegations were plainly contradicted by the terms of the Policy and Booklet. The Court was able to view the Policy and Booklet without converting the 12(b)(6) motion to a motion for summary judgment. The Policy and Booklet unmistakably demonstrate that ERISA applies to the insurance plan at the basis of Orlando's claims. Since ERISA preempts all state law causes of action dealing with

disputes concerning ERISA plans, Orlando may not bring his breach of contract and violation of Illinois insurance law claims; he must state claims under ERISA.

## IV. CONCLUSION

For the foregoing reasons, United's Motion to Dismiss is **GRANTED**.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **September 28, 2007**