IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN M. ORLANDO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 06 C 3758 |
| UNITED OF OMAHA LIFE INSURANCE | ) Magistrate Judge Susan E. Cox |
| COMPANY, a Nebraska corporation, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In October 2002, John Orlando ("plaintiff") was hired by West Monroe Partners, LLC ("West Monroe").[1] West Monroe offered its employees long-term disability benefits through a voluntary group insurance policy issued by United of Omaha Life Insurance Company ("defendant"). Plaintiff purchased the insurance from defendant and the policy became effective January 1, 2003 (the "Policy"). Plaintiff became disabled in June 2003 and filed a claim for maximum benefits under the Policy. As plan administrator, defendant reviewed the claim and paid less than the full amount of plaintiff's claim. Plaintiff now argues that he did not receive the full amount of benefits he was entitled to under the Policy.

As the Policy is governed by the Employee Retirement Income Security Act ("ERISA"), the first question when reviewing the benefit determination of the plan administrator is what standard of review should be applied. To resolve this issue, the Court permitted the parties to file cross-motions for a declaration of the standard of review. The United States Supreme Court has held that the denial of ERISA benefits is to be reviewed *de novo* unless the policy gives the administrator the authority

---

[1] The facts are taken from the parties' motions and accompanying briefs.

to determine eligibility for benefits or to construe the terms of the policy and the participants have notice that such power was given.[3] In contrast, if the policy vests discretionary authority in the plan's administrator and the participants have notice that such power was given, a court's review will be deferential and apply the "arbitrary and capricious" standard.[4] In this case, there is no dispute that the discretion-granting language existed, but there is a dispute as to whether plaintiff had proper notice that it was included in the Policy. For the reasons outlined below we find there was proper notice; the plaintiff's motion is denied [dkt 97] and the defendant's motion is granted [dkt 93].

**I.      Background**

According to plaintiff's counsel in oral argument, plaintiff purchased coverage from defendant in the fall of 2002 and the Policy became effective January 1, 2003. Defendant both provided the coverage and acted as the plan's administrator. Plaintiff alleges that he became disabled as of June 23, 2003 and was therefore entitled to receive benefits under the Policy. Plaintiff filed a claim for the maximum amount of benefits and defendant denied the full claim, but paid out partial benefits. Here, plaintiff challenges the denial of what he deems to be the full amount he is entitled to under the Policy and seeks an additional $117,440.40 of long-term disability benefits.

Defendant's counsel explained in oral argument that when plaintiff purchased the insurance coverage, and even when the Policy went into effect on January 1, 2003, no written policy document existed. At that time, defendant had yet to finalize or distribute the Policy, which is, according to defendant, customary practice. On March 5, 2003, three months after the Policy went into effect, West Monroe's human resources director, Paulette McKissic ("McKissic"), telephoned defendant and requested a copy of the Policy's contract materials and booklets. The parties employ the terms

---

[3]*Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 115 (1989).
[4]*Pearlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980 (7th Cir. 1999).

"Policy Booklet" and "Certificate Booklet" interchangeably to refer to the Policy's ERISA Summary Plan Description ("SPD"). For the purposes of this Order, the Court will hereinafter refer to this document as the SPD. On March 7, 2003, a senior account assistant of defendant's, Donna Carling ("Carling"), informed McKissic, via email, that she would be mailing the master contract materials and printed copies of the SPDs. Carling also attached an electronic copy of the SPD to the email. Then on March 11, 2003, Carling received the policy materials and mailing instructions from the company's contract department. The instructions provided Carling a list of documents that were to be included in the mailing. Defendant claims that on April 1, 2003, Carling mailed the policy materials, which included a single copy of the Policy and multiple copies of the SPD. The documents were supposedly mailed to a location that West Monroe provided as its mailing address on its insurance application.

The Policy is a twelve-page document, physically composed of a number of parts. It contains several pages of general provisions, an addendum, and a number of riders attached at the end. One of the riders attached is entitled, "Authority to Interpret Policy" ("Rider"). The discretion-granting language is contained in this Rider. Defendant used the functional equivalent of the Seventh Circuit's "safe harbor" language when drafting its discretion-granting language.[5] The Rider states, in relevant part:

> By purchasing the policy, the Policyholder grants United of Omaha Life Insurance Company the discretion and final authority to construe and interpret the policy. This means that United has the authority to decide all questions of eligibility and all questions regarding the amount and payment of any policy benefits within the terms of the policy as interpreted by United. In making any decision, United may rely on the accuracy and completeness of any information furnished by the Policyholder or an insured person. United's interpretation of the policy as to the amount of benefits and eligibility shall be binding and conclusive on all persons.

---

[5]*See Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 637 (7th Cir. 2005).

The SPD, in contrast, is a forty-page document. It contains the certificate of insurance, definitions, employee eligibility, family and medical leave rider, schedule of benefits, description of benefits, vocational rehabilitation provision, procedures on the payment of claims, procedures on the review of claims, appeal rights, and other provisions. The SPD lacks any mention of the plan administrator's discretionary power.

### III. Analysis

Defendant refers the Court to the Policy's language in the Rider, which clearly grants discretionary authority. Defendant, therefore, claims the Court should apply the arbitrary and capricious standard. Plaintiff primarily disputes that the discretion-granting language was not included in the SPD that was distributed to West Monroe via both email and postal mail but, instead, was located in the Rider which plaintiff claims neither West Monroe nor he received. Plaintiff further argues that inclusion of the discretion-granting language in such a manner is insufficient to provide the requisite notice and, thus, it should not apply to change the standard of review from *de novo* to arbitrary and capricious. Plaintiff then argues two additional points to support his position that the discretion-granting language does not apply here: (1) there is no evidence that either plaintiff or West Monroe received the Policy containing the Rider; and (2) there is no evidence that West Monroe conferred discretionary authority on defendant.

Where the effectiveness of discretionary language in an ERISA policy is at issue, courts have consistently found that notice of the plan administrator's powers is crucial since the authority confers the extreme "power to re-define the entire concept of disability, or regularity of physician care, on a case-by-case basis."[6] In deciding whether the plan confers discretion to the administrator,

---

[6] *Diaz*, 424 F.3d at 639.

a court reviews the language of the plan *de novo*, as it would review the language of any contract.[7] The language of the terms in the plan must give the employee adequate notice that the plan administrator is to make a judgement largely insulated from judicial review by reason of being discretionary.[8]

**A.     The Summary Plan Description**

Plaintiff argues that the failure of defendant to include mention of the discretionary power of the plan administrator in the SPD is a failure to provide notice. Section 1022(a) of ERISA requires that a "summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries."[9] It is undisputed that the SPD was distributed to plaintiff and that it lacks any of the discretion-granting language at issue here. However, the SPD indicates that the coverage described within the document is "subject to the terms and conditions" of the Policy, which include the Rider that declares, "[t]his rider is made part of Group Policy GTLD-86F9," and that "[t]his rider is effective January 1, 2003," the same effective date as the Policy.

Discretionary authority is an umbrella power. Vesting such control in a plan administrator curtails the rights of an insured when appealing a decision denying benefits because it dramatically alters the standard of review a court applies in its examination. Despite this, Section 1022(b) of ERISA, in enumerating what a SPD must disclose, does not specifically require notice of discretionary authority.[10] Section 1022(b) does, however, require that the SPD contain information regarding "the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title)."[11] Though plaintiff argues

---

[7]*Id*. at 637.
[8]*Hertzberger*, 205 F.3d at 332.
[9]29 U.S.C. § 1022(a).
[10]29 U.S.C. § 1022(b).
[11]*Id*.

that this requirement includes, by implication, notice of effective discretionary authority, the Seventh Circuit has not demanded that discretion-granting language must be included in a SPD.

Despite the seemingly paramount importance of the grant of discretionary authority, other circuits that have addressed this issue do not mandate that discretionary language be contained in SPDs to satisfy the notice requirement. The Ninth Circuit has found that, "[t]he arbitrary and capricious standard of review is warranted where the plan documents provide for discretionary authority, the summary plan description does not contain any conflicting language, and the applicable statutes and regulations do not require that the SPD contain provisions addressing the issue."[12] In concurrence, the Forth Circuit has held that, "[a]lthough the SPD contains no such language, we find no conflict between the absence of discretionary language in the SPD and its presence in the Plan. Vesting the plan administrator with discretion in making coverage decisions simply does not conflict with the SPD's silence on the matter."[13]

Although the Seventh Circuit has not addressed this issue head on, it is clear that this Circuit deems notice to the employee of the reservation of discretionary authority to the plan administrator as crucial. In cases where interpretations of the language used to grant discretion were contested, the Seventh Circuit has stated, "[t]he critical question is whether the plan gives the employee adequate notice."[14] The Seventh Circuit has therefore recommended "safe harbor" language–specific phrases (or their equivalent)–to be written into policies so there is no confusion as to the significance of the words and to ensure insulation from plenary review.[15] In this case, the language found in the Rider

---

[12] *Tocker v. Philip Morris Co., Inc.*, 470 F.3d 481, 489 (9th Cir. 2006).
[13] *Martin v. Blue Cross & Blue Shield of Virginia, Inc.*, 115 F.3d 1201, 1205 (4th Cir. 1997) (citing *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1321 (9th Cir. 1995), overruled on other grounds by *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006)).
[14] *Diaz*, 424 F.3d at 639.
[15] *Id*. at 637.

is not contested because it is undisputed by the parties that it is the functional equivalent of the Seventh Circuit's "safe harbor" guidelines. However, plaintiff argues that even if the language employed is certain, if the words are buried in a separate document, as they were here, the language does nothing to further the goal of putting an employee on notice.

Defendant maintains that the language in the Policy's Rider was sufficient to put plaintiff on notice. Defendant refers the Court to the Seventh Circuit's decision that an omission of a term from the SPD does not, by negative implication, alter the terms of the plan itself, stating "[i]f silence in the SPD were enough to trump the underlying plan, then SPDs would mushroom in size and complexity until they mirrored the plans."[16] Where an entire policy is silent in regards to discretion - in both the terms of the policy and in the summary plan description - adequate notice has not been provided to the employee.[17] However, where the discretion-granting language is found in a document that is part of the policy, the Seventh Circuit has found that notice is satisfied and that the terms have been properly communicated to the participants and beneficiaries.[18] The discretion-granting language can be on any page of a multi-page plan and the fact that the page bears its own caption is irrelevant.[19]

Under the applicable Seventh Circuit case law, as well as cases from sister circuits on this issue, this Court must conclude that defendant's position is the one mandated by the existing law. The Court reaches this result reluctantly, given the unique situation here. Defendant's forty-page "summary" was in fact over 300 percent larger than the Policy document itself. It contained essentially all of the pertinent information concerning the coverage being offered to the employee,

---

[16] *Mers v. Marriott Intern. Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014, 1024 (7th Cir. 1998).
[17] *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2005).
[18] *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005).
[19] *Shyman*, 427 F.3d at 455.

save the all-important discretionary language. Furthermore, the portion of the Policy that does contain the discretionary language was written after coverage was contracted for and is less than one-half of one page in length. Moreover, defendant did not include this the short provision (with vast importance) in the actual Policy but, instead, in a rider attached at the end of the document.

Nevertheless, notice of discretionary authority is not currently demanded in the SPD. Section 1022(b) of ERISA does not specifically enumerate such a requirement and, likewise, the circuits that have addressed the issue have not found its absence to be fatal. In light of the decisions of the other circuits and the absence of such a requirement in the Seventh Circuit, the Court finds the inclusion of the discretion-granting language in the Rider, as part of the Policy, to be sufficient to put the plaintiff on notice.

**B.    Plaintiff's Additional Arguments**

Plaintiff makes two additional arguments that fail to contravene notice. First, plaintiff contends that there is no evidence that West Monroe or plaintiff himself ever received the Policy or the Rider contained within it. Second, plaintiff argues that defendant stealthily attempted to give itself discretionary authority by unilaterally inserting the Rider without discussing its existence or meaning with West Monroe.

As to the first issue, defendant makes a lengthy argument that the common law mailbox rule should apply in this situation to create a rebuttal presumption of mailing. However, the Court need not reach the merits of this argument since, despite the party's briefs, in oral argument plaintiff's counsel acknowledged that actual notice is not required. Rather, what is important is constructive notice. Though the actual Policy had not even been finalized by defendant at the time it went into effect, it was available at least by April 1, 2003, the date when defendant claims a single copy was

save the all-important discretionary language. Furthermore, the portion of the Policy that does contain the discretionary language was written after coverage was contracted for and is less than one-half of one page in length. Moreover, defendant did not include this the short provision (with vast importance) in the actual Policy but, instead, in a rider attached at the end of the document.

Nevertheless, notice of discretionary authority is not currently demanded in the SPD. Section 1022(b) of ERISA does not specifically enumerate such a requirement and, likewise, the circuits that have addressed the issue have not found its absence to be fatal. In light of the decisions of the other circuits and the absence of such a requirement in the Seventh Circuit, the Court finds the inclusion of the discretion-granting language in the Rider, as part of the Policy, to be sufficient to put the plaintiff on notice.

**B.    Plaintiff's Additional Arguments**

Plaintiff makes two additional arguments that fail to contravene notice. First, plaintiff contends that there is no evidence that West Monroe or plaintiff himself ever received the Policy or the Rider contained within it. Second, plaintiff argues that defendant stealthily attempted to give itself discretionary authority by unilaterally inserting the Rider without discussing its existence or meaning with West Monroe.

As to the first issue, defendant makes a lengthy argument that the common law mailbox rule should apply in this situation to create a rebuttal presumption of mailing. However, the Court need not reach the merits of this argument since, despite the party's briefs, in oral argument plaintiff's counsel acknowledged that actual notice is not required. Rather, what is important is constructive notice. Though the actual Policy had not even been finalized by defendant at the time it went into effect, it was available at least by April 1, 2003, the date when defendant claims a single copy was

save the all-important discretionary language. Furthermore, the portion of the Policy that does contain the discretionary language was written after coverage was contracted for and is less than one-half of one page in length. Moreover, defendant did not include this the short provision (with vast importance) in the actual Policy but, instead, in a rider attached at the end of the document.

Nevertheless, notice of discretionary authority is not currently demanded in the SPD. Section 1022(b) of ERISA does not specifically enumerate such a requirement and, likewise, the circuits that have addressed the issue have not found its absence to be fatal. In light of the decisions of the other circuits and the absence of such a requirement in the Seventh Circuit, the Court finds the inclusion of the discretion-granting language in the Rider, as part of the Policy, to be sufficient to put the plaintiff on notice.

**B.    Plaintiff's Additional Arguments**

Plaintiff makes two additional arguments that fail to contravene notice. First, plaintiff contends that there is no evidence that West Monroe or plaintiff himself ever received the Policy or the Rider contained within it. Second, plaintiff argues that defendant stealthily attempted to give itself discretionary authority by unilaterally inserting the Rider without discussing its existence or meaning with West Monroe.

As to the first issue, defendant makes a lengthy argument that the common law mailbox rule should apply in this situation to create a rebuttal presumption of mailing. However, the Court need not reach the merits of this argument since, despite the party's briefs, in oral argument plaintiff's counsel acknowledged that actual notice is not required. Rather, what is important is constructive notice. Though the actual Policy had not even been finalized by defendant at the time it went into effect, it was available at least by April 1, 2003, the date when defendant claims a single copy was

postal mailed to West Monroe. While plaintiff would have only had, at most, eleven weeks between the mailing of the Policy and when he became disabled to read it, it is uncontested that he nonetheless had the opportunity to request and inquire about the Policy, but did not do so. Therefore, plaintiff had constructive notice.

Secondly, defendant aptly asserts that plaintiff cannot nullify discretionary authority simply by refusing to read or acknowledge the terms of the Policy. "[Plaintiff] does not contend that a beneficiary who inquired (or looked for himself) would not have discovered the discretion-granting language."[20] While plaintiff and West Monroe may claim today that they did not understand or fully comprehend the meaning of the Rider, ultimately, they failed to inquire further. Plaintiff received the SPD, which stated clearly that it was merely a summary and subject to the terms included in the full Policy. Plaintiff had the opportunity and ability to request a copy of the full Policy from defendant, if he so desired. Plaintiff's and West Monroe's failures to inquire further cannot be manipulated to find a lack of authority conferred to defendant.

## IV. Conclusion

Defendant provided constructive notice to plaintiff that it was vested with discretionary authority as plan administrator. While the SPD was silent on the issue, plaintiff had the opportunity to investigate and read the Policy and the attached Rider. These documents provided notice of the discretionary power. At this time, Section 1022(b) of ERISA lacks an explicit requirement that notice of discretionary authority be included in a SPD. While the Seventh Circuit has yet to address this issue, other circuits have found such notice is not required in a SPD when it is included in the policy itself. Therefore, plaintiff's claim challenging the denial of benefits should be reviewed under the

---

[20] *Id.*

arbitrary and capricious standard. The plaintiff's motion is denied [dkt 97] and the defendant's motion is granted [dkt 93].

**IT IS SO ORDERED**

**ENTERED:** _____

UNITED STATES MAGISTRATE JUDGE

July 29, 2008